Per Curiam: :*
This is a contract case in which, the Armed Services Board of Contract Appeals denied an appeal in which plaintiff requested the Board to direct the contracting officer to issue a change order granting an equitable adjustment to cover extra costs incurred in procuring and installing for the Department of the Navy two specified components in ships’ audio entertainment systems.[1]
The case is before the court on defendant’s motion for summary judgment. In support of its motion, defendant relies on the pleadings and indicated portions of the administrative record which in its entirety includes numerous exhibits and three volumes of testimony before the Board. In response to defendant’s motion, plaintiff’s counsel has filed a number of briefs (including a special supplemental brief permitted by the court). This opinion is based upon an examination of those portions of the administrative record referred to and cited by the parties in their various briefs.

The Recorder Claim

The specifications of the contract which was awarded to plaintiff on June 13,1955, set forth in detail the performance requirements for the recorders which were to be installed in the ships’ audio entertainment systems, but made no mention of a brand name or manufacturer. Plaintiff contends, in essence, that at the time of the award, the only commercially available recorder which met the requirements of the specifications in all respects was a certain model of the Magne-corder, and that the specifications were, therefore, so restrictive in nature as to indicate that a bidder would be required to purchase the Magnecorder; that plaintiff prepared its bid on the understanding that the Magnecorder was intended by the Navy; that shortly after the contract was awarded, the manufacture of the Magnecorder was stopped; and that as *462 a result, plaintiff was obliged to incur extra expense in modifying another recorder to meet the specifications.
The Board found that, for commensurate prices, other competent manufacturers could make the recorder to the specified requirements, and that at the time of the award of the contract, there was advertised, as available, another brand of recorders, in addition to the Magnecorder, which with only minor adaptation, would conform to the specified requirements. In denying plaintiff’s appeal on the recorder claim, the Board stated:
In sum, we find no evidence of any statement, act, or omission chargeable to representatives of the Government, and no basis in the terms of the invitation, the bid, or the awarded contract, in support of the proposition, essential to Appellant’s case, that the Government represented to Appellant or all prospective bidders that the Government would assume the supplier’s normal risk of component availability at costs commensurate with the prices to be offered by them. We conclude that the Government does not have contractual responsibility for the events giving rise to the recorder claim and is not liable under the contract “Changes” article or otherwise for costs of the kinds included therein, and the appeal therefore will be denied as to that claim.
These facts as found by the Board are amply supported by the record, and clearly negate plaintiff’s main thesis regarding the restriction of the contractor to the Magnecorder. River Construction Corp. v. United States, 159 Ct. Cl. 254 (1962). Moreover, the question of law, i.e., interpretation of the contract documents, which the recorder claim presents and which is resolved independently by the court,[2] must be decided against plaintiff. A reading of the specifications compels the conclusion that there was no mention directly or indirectly of a brand name or manufacturer and that only performance requirements were specified. The elements of the instant case are in marked contrast to the elements of Jack Stone Co. v. United States, 170 Ct. Cl. 281, 844 F. 2d 370 (1965). In the Stone case, the specifications contained a brand name for a particular item of equipment, but the *463 contract also provided that articles identified by name, make or catalogue number should be interpreted as establishing a standard of quality and not as limiting competition. The court ruled that the plaintiff in the Stone case was not required to furnish the brand name equipment alone, but could furnish equipment from another source if equal to the brand name equipment.
In the instant case, it is clear that plaintiff anticipated using the Magnecorder in the installation. Plaintiff was not, however, required by the contract to use the Magnecorder and the fact that its manufacture was stopped and that plaintiff incurred extra expense in modifying another recorder to meet the specifications, was not the fault of the Government. Rolin v. United States, 142 Ct. Cl. 73, 160 F. Supp. 264 (1958); Vogt Brothers Mfg. Co. v. United States, 160 Ct. Cl. 687 (1963); Merritt-Chapman c& Scott Corp. v. United States, supra. Plaintiff’s recorder claim must accordingly be denied.

The Switch Claim

There are two interwoven theories advanced by plaintiff on its switch claim. The first is substantially the same as its theory on the recorder claim, namely, that the specifications were so restrictive that the switches were available from only one manufacturer who experienced considerable manufacturing difficulty which caused plaintiff delay and extra expense. The second theory is that defendant’s specifications for the switches were defective. The net result, so plaintiff contends, is that defendant is liable for plaintiff’s extra costs.
It is clear that the specifications and the drawings did not indicate by whom the switches were to be manufactured, but were, as in the case of the recorders, only prescriptions of contents and performance. Although there was conflict in the testimony before the Board relating to conversations between the parties regarding “approved” sources of the switches, there was substantial evidence to support the following findings of the Board:
* * * "We find on the record that Appellant estimated and submitted its low bid covering 26 program consoles and a prototype unit requiring the use of 205 multi-deck *464 rotary switches with the knowledge that there were only two past producers of the required switches; with the understanding that Firm A would not be available to it as a supplier of the switches; and with the knowledge (not communicated to or shared by representatives of the contracting Bureau) that the past performance of Firm B in furnishing Appellant with single-deck switches of the same type for use under contracts with other Naval activities had proved to be less than satisfactory. As in the case of the recorder claim, * * * we find nothing in the circumstances surrounding Appellant’s preparation and submission of its bid or m the contract itself which serves to shift from Appellant to the Government the general contractual responsibility for the future availability of conforming switches for use in the consoles to be delivered by Appellant thereunder.
The two principal difficulties encountered by the manufacturer of the switches, intermittent electrical contacts and shaft breakage, were the subject of testimony before the Board by expert witnesses who differed respecting the cause of the difficulties, but there was substantial evidence to support the following findings of the Board:
* * * we find that Appellant has not established by a preponderance of the evidence that any of the difficulties underlying its switch cost claim were either caused by limiting requirements of the general guidance drawing or relieved by any change in the requirements thereof, and that evidence for the Government affirmatively establishes that the difficulties concerning so-called “design” matters are not related to matters of limiting “design” established by the guidance drawing but with matters of manufacturing “design” involved in the supplier’s detailing of methods for fabrication within the scope of the general requirements. We find further that Appellant’s supplier exchanged defective and malcon-forming switches on hand at no additional cost and without any ordered change in the guidance drawing, and in summary that the record establishes the matters of switch procurement difficulty complained of by Appellant to be within the area of its responsibility under the contract.
Although defendant did make changes in the switch specifications, the evidence does not establish that the specifications were faulty or that, if faulty, they caused the delay *465 and extra expense. In J. D. Hedin Construction Co. v. United States, 171 Ct. Cl. 70, 347 F. 2d 235 (1965), this court stated (171 Ct. Cl. at 82-3);
It is well settled that the government is relieved of liability irrespective of its faulty specifications, where the actual delays were occasioned by factors outside the government’s control. * * * Such a determination is strictly a factual one * * *.
Plaintiff’s switch claim, on the authority of River Construction Corp. v. United States, supra, must also be denied.
“Attitude” Of The Presiding Board Member
In its petition plaintiff contends that the attitude of the presiding Board member of the Armed Services Board of Contract Appeals was not impartial and that he was not fair. The contention is apparently based upon (1) a statement allegedly made before the commencement of the transcribed hearing in which the presiding Board member “chastised” plaintiff for untimely action in its case, (2) the rulings in favor of the Government and/or against plaintiff on admissibility of evidence, and (3) a denial by the presiding Board member of plaintiff’s motion to recess and reconvene at a later date for further testimony.
There is no indication in the record which is before this court that the presiding Board member “chastised” plaintiff; nor does the record reflect any objection or protest by plaintiff in the administrative proceedings to any such alleged chastisement. In United States v. L. A. Tucker Truck Tines, Inc., 344 U.S. 33, 36-37 (1952), the Supreme Court stated:
We have recognized in more than a few decisions, and Congress has recognized in more than a few statutes, that orderly procedure and good administration require that objections to the proceedings of an administrative agency be made while it has the opportunity for correction in order to raise issues reviewable by the courts. * * * Simple fairness to those who are engaged in the tasks of administration, and to litigants, requires as a general rule that courts should not topple over administrative decisions unless the administrative body not only *466 has erred but has erred against objection made at the time appropriate under its practice.
A Rsuming arguendo that before the commencement of the transcribed hearing, the presiding Board member made an unduly harsh comment to plaintiff regarding untimely action, no pattern of unfairness or partiality appears on the record in the rulings made by the presiding Board member; the denial of plaintiff’s motion to recess and convene at a later date for further testimony does not appear to be an abuse of discretion; and the ultimate findings and conclusions of the Board are amply supported by the record. Adams Dairy Co. v. St. Louis Dairy Co., 260 F. 2d 46 (8th Cir. 1958).
Accordingly, defendant’s motion for summary judgment is granted and plaintiff’s petition is dismissed.

This opinion incorporates, with minor changes, the opinion prepared by Trial Commissioner Richard Arens at the request of the court, under Rule 54(b). The facts are stated in the opinion.

 A SBC A No. 5660, decided April 30, 1962.

 Merritt-Chapman & Scott Corp. v. United States, 174 Ct. Cl. 250, 355 F. 2d 622 (1966).